UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ALAIN GOMEZ,

    Plaintiff,

v.

TOWN OF WEST NEW YORK, *et al.*,

    Defendants.

Civ. No. 2:13-689 (WJM)

OPINION

## WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Alain Gomez brings this action against the Town of West New York, Mayor Felix Roque, Deputy Mayor Silvio Acosta, Commissioner FiorD'Aliza Frias, and the Mayor's son, Joseph Roque[1] (collectively "Defendants"), alleging various violations of state and federal constitutional rights as well as a violations of New Jersey's Conscientious Employee Protection Act ("CEPA"). This matter comes before the Court on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. L. Civ.R. 78.1(b). For the reasons set forth below, Defendants' motion to dismiss is **DENIED**.

## I.    BACKGROUND

Plaintiff alleges that Defendants harassed him and terminated him from a position as the UEZ Coordinator for the Town of West New York for (1) refusing to use public resources to fundraise for Mayor Roque's private not-for-profit organization; (2) making a complaint to PEOSHA; (3) speaking about the misuse of public resources and other alleged abuses in Roque's government; and (4) contributing to a website called www.recallroque.com.

Plaintiff is a long-time, politically active resident of West New York. (Complaint at ¶ 15-16) He was an employee of the Town from 1998 until 2008.

---

[1] Joseph Roque is on the Town's Planning Board, but the Complaint only names him in his individual capacity. (*See* Complaint at ¶ 9)

1

(Complaint at ¶ 17-19)  His father is also an employee of the Town.  (Complaint at ¶ 22)

Plaintiff was a political supporter of Felix Roque's successful 2011 campaign for West New York Mayor.  (Complaint at ¶ 24-27)  In May 2011, the same month that Roque won the election, the Town rehired Plaintiff as a data processing clerk and then promoted him to UEZ Coordinator the next month.  (Complaint at ¶ 20-21)  Plaintiff alleges that he held a civil service position.  (*See* Complaint at ¶ 99)

Soon after taking office, Mayor Roque began to face resistance from members of his administration, employees, and his constituents who had once supported Roque as a reformer.  (Complaint at ¶ 28)  Plaintiff alleges that Roque responded to the dissention by removing Commissioner Count J. Wiley as the Director of the Department of Public Works and firing various Town employees without cause, threatening to report individuals for tax audits, and making false statements to news agencies regarding municipal employees.  (Complaint at ¶ 29)

On December 5, 2011, Mayor Roque asked Gomez to secure contributions for the Mayor's charitable not-for-profit organization, West New York Forever, from merchants that are part of the UEZ.  (Complaint at ¶ 31-32)  When Gomez reported later that month that he had made no progress, Mayor Roque harassed him by calling him demeaning names and ordered Gomez to go out during work hours and "use public resources" to secure contributions.  (Complaint at ¶ 33)  Gomez refused, alleging that he knew "using public resources" during work hours and under the auspices of his office to secure these contributions was illegal.  (Complaint at ¶ 36)

Gomez claims that Defendants immediately retaliated against him by relocating him to a small office with improper ventilation.  (Complaint at ¶ 38-40)  He complained to the Public Employees Occupations Safety and Health Department ("PEOSHA"), which issued a Notice of Order to Comply to the Town on January 31, 2011.  (Complaint at ¶ 41-44)

At the same time, Gomez claims he became interested in a website called www.recallroque.com (the "Recall Website") and contributed to the website's content.  (Complaint at ¶ 45-46)  At the same time, he also decided to run for Vice President of his local union, and during the campaign, he spoke out about Mayor Roque's abuses, including the misuse of public resources.  (Complaint at ¶ 47)

Gomez reported Mayor Roque's allegedly illegal demand that he use public resources to fundraise for West New York Forever to Town Administrator Carmela Riccie.  (Complaint at ¶ 49)  Riccie agreed with Gomez's concerns.  (Complaint at

2

¶ 50) Riccie set up a meeting with Town Commissioner Frias, who oversaw the UEZ. (*Ibid.*) Gomez and Riccie attended the meeting. (*Ibid.*) At this meeting, Riccie advised that Gomez was not to do fundraising during work hours. (Complaint at ¶ 51) Gomez claims that Frias is "politically aligned" with Roque. (Complaint at ¶ 52)

Shortly after the meeting with Commissioner Frias, Mayor Roque called Gomez, referenced the meeting with Commissioner Frias, expressed his displeasure, and threatened to terminate him. (Complaint at ¶ 53) Two days later, on February 3, 2012, Gomez was terminated. (Complaint at ¶ 54) Gomez had no hearing and claims that the reason for his termination, forging Commissioner Frias's signature, was pretextual. (Complaint at ¶ 55)

Plaintiff also alleges that "Mayor Roque and his "co-conspirators" illegally hacked the Recall Website and discovered the extent of the support for the recall of Mayor Roque. (Complaint at ¶ 67) Mayor Roque and these co-conspirators also allegedly hacked into Gomez's personal e-mail accounts for the purposes of "quelling" his First Amendment rights. (Complaint at ¶ 68) Although these "co-conspirators" are not named in Gomez's Complaint, there is a criminal complaint that alleges Joseph Roque conspired with his father and hacked into the Recall Website and an anonymous victim's personal e-mail account. (*See U.S. v. Roque*, 2:12-cr-540, ECF No. 1)

A few weeks after Gomez's termination, Mayor Roque and Deputy Mayor Acosta had a meeting with Gomez about the Recall Website where Roque "threatened and intimidated" Gomez. (Complaint at ¶ 58-62) At this meeting, Roque and Acosta presented documents to Gomez and stated that the documents were proof that Gomez and others were trying to create a petition to recall Roque as Mayor. (Complaint at ¶ 60) At the end of the meeting, Roque and Acosta allegedly offered to rehire Plaintiff as the Deputy Director of the Parks Department. (Complaint at ¶ 62) The next day, Plaintiff alleges he was demoted to the position of garbage collector without any kind of hearing. (Complaint at ¶ 64)

Plaintiff also alleges that even after the end of his employment, Defendants continued to subject him to harassment that included calling him names, making disparaging comments about him to the public and the media, threatening his father's employment with the Town, keeping him under surveillance, and uttering humiliating, intimidating, and threatening remarks. (Complaint at ¶ 69-70)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

## III. DISCUSSION

Plaintiff's four-count Complaint alleges that Defendants engaged in conduct entitling him to relief under 42 U.S.C. § 1983 for violations of his First Amendment Rights and under the New Jersey Civil Rights Act (NJCRA) for violations of parallel rights guaranteed under Article I of the New Jersey Constitution. Plaintiff also seeks relief under 42 U.S.C. § 1983 and NJCRA for removal from his job without procedural due process.

Both 42 U.S.C. § 1983 and NJCRA provide an avenue for legal relief against public officials who act under the color of law to violate a plaintiff's constitutional rights. *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005); *Rezem Family Associates, LP v. Borough of Millstone*, 423 N.J. Super. 103, 115 (App. Div. 2011). NJCRA was modeled after § 1983, and the elements of claims brought under NJCRA are usually the same as under § 1983. *Id.* at 115. *See also Trafton v. City of Woodbury*, 799 F. Supp. 2d 417 (D.N.J. 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983.").

Plaintiff additionally seeks relief under New Jersey's whistleblower statute, CEPA, N.J.S.A. § 34:19-1.

Defendants seek dismissal of each count of the Complaint as well as dismissals of each of the individual Defendants.

### A. Counts of the Complaint

Plaintiff has stated claims for each of the four counts of the Complaint. The reasons are set forth below.

#### 1. First Amendment / Article I Claims (Counts One and Two)

In Counts One and Two of the Complaint, Plaintiff does state a claim for violations of rights guaranteed by the First Amendment of the U.S. Constitution ("First Amendment") and Article I of the New Jersey Constitution ("Article I"). Free speech claims under the New Jersey Constitution are interpreted consistently with free speech claims under the First Amendment. *Johnson v. Yurick,* 156 F. Supp.2d 427, 436 (D.N.J. 2001), *aff'd* 39 Fed. App'x. 742 (3d Cir. 2002); *Binkowski v. State,* 322 N.J. Super. 359, 369 (App. Div. 1999). A claim of First Amendment retaliation requires demonstration of (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006).

In order for the speech to receive First Amendment protection, the speech must be a "matter of public concern." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003). Defendants argue that Gomez's speech was not a "matter of public concern" because it was a personal grievances or because it was uttered in the course of his official duties. *Id.* at 413; *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). The court does not agree.

Speech "may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Mitchell v. Street*, 415 F. Supp. 2d 490, 495 (E.D. Pa. 2005) (*citing Baldassare v. N.J.,* 250 F.3d 188, 195 (3d Cir. 2001)). The Ninth Circuit has specifically held that potential misuse of public funds is a matter of public concern.

5

*Uhl v. Lake Havasu City*, 359 F. App'x 749, 751 (9th Cir. 2009) (*citing Robinson v. York*, 566 F.3d 817, 822, 823 (9th Cir. 2009); *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 747 (9th Cir. 2001); *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1406 (9th Cir. 1988)). The Complaint alleges that Defendants retaliated against Plaintiff for speaking about Roque's alleged attempts to misuse public resources. This is a matter of public concern and not a personal grievance.

Alternatively, Defendants argue that the speech was not protected because the Plaintiff's speech about the UEZ was part of his official duties. *See Garcetti v. Ceballos*, 547 U.S. at 422. On the contrary, the Complaint alleges that Roque wanted Gomez to take time away from his official duties as the UEZ Coordinator to raise funds for Roque's private organization. Plaintiff's discussions about the fundraising demands were therefore not part of his official duties.

As a result of engaging in protected speech, Defendants allegedly insulted Plaintiff, moved him to an improperly ventilated office, terminated him, and further intimidated him after his termination. Any of these would have deterred a person of ordinary firmness from exercising his rights to free speech. *See Thomas*, 463 F.3d at 296. The First and Second Counts of his Complaint thus survive the Defendants' motion to dismiss.

### 2. *CEPA (Count 3)*

In order to maintain a cause of action under CEPA, a plaintiff must demonstrate: (1) that he or she reasonably believed that his or her employer's conduct was violating a law, rule, or regulation or a clear mandate of public policy concerning the public health or safety; (2) that he or she performed a whistle-blowing activity described in N.J.S.A. § 34:19-3; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 465 (2003). Whistle-blowing activities include refusing to engage in illegal activities or objecting to them. N.J.S.A. § 34:19-3. Plaintiff has successfully pleaded that first element by stating that he reasonably believed that Roque asked him to violate a law by misusing public resources to help raise money for Roque's private charity. Plaintiff has successfully pleaded the other elements by stating that his refusal to do so and/or his reporting this issue to the Town Administrator and Town Commissioner resulted in his dismissal. Count 3 of his Complaint thus survives the motion to dismiss.

### *3. Procedural Due Process Violations (Count 4)*

Plaintiff's Complaint states that he was a public employee who was terminated without any kind of hearing, in violation of the procedural due process rights afforded to him in the Fifth Amendment and N.J.S.A. § 11A:2-13 to -14. Certain public employees do have a constitutionally-protected property interest in their jobs. To succeed on a claim that removal from a position of public employment violates due process rights, the public employee must prove (1) that the dismissal deprived him of a property or liberty interest, and (2) that the employer did not afford him adequate procedural protections in connection with the action. *Perez v. Cucci*, 725 F. Supp. 209, 241 (D.N.J. 1989) (*citing Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230 (1988); *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538-41 (1985)).

Under New Jersey law, some public employees do have a property interest in their jobs. *See Ditzel v. Univ. of Med. & Dentistry of New Jersey*, 962 F. Supp. 595, 607 (D.N.J. 1997). Such positions are those protected by contract, collective bargaining agreement, civil service tenure, or a fixed term. *Siss v. Cnty. Of Passaic*, 75 F. Supp. 2d 325, 341 (D.N.J. 1999). Plaintiff alleges in the Complaint that he was entitled to the protections of the New Jersey Civil Service Act. (Complaint at ¶ 99) There is no dispute that the Plaintiff was not given any procedures before being terminated. He therefore has stated a claim for a procedural due process violation.

### B. Individual Defendants

Defendants argue that the Plaintiff has failed to state a cause of action against each of the individual Defendants. For the following reasons, the Court finds that the Plaintiff has stated causes of action against each of these Defendants.

### *1. Town of West New York*

Constitutional claims against a municipality are governed by *Simmons v. City of Philadelphia*, 947 F.2d 1042 (3rd Cir. 1991), *cert. denied*, 503 U.S. 985 (1992) and *Monell v. Dep't of Social Srvs.*, 436 U.S. 658 (1978). A municipality may be held liable for a constitutional injury when (1) particular policymaking officials within the municipality promulgated or acquiesced in a municipal policy or custom; (2) the policymaking official was deliberately indifferent to the constitutional rights

of the municipality's citizens; and (3) the policy or custom proximately caused a constitutional injury. *Simmons*, 947 F.2d at 1060-62. A custom or policy need not be demonstrated where Plaintiff sufficiently alleges that a municipal policymaker himself violated the law. *Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 743 (D.N.J. 2012) (*citing Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

West New York argues that Plaintiff has not alleged that Mayor Roque was a policymaking official, nor the existence of a policy or custom that caused constitutional injury. Neither argument is convincing.

An official has policy-making authority capable of binding the municipality to his conduct, if (1) as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question and (2) the official's authority to make policy in that area is final and unreviewable. *Hill v. Borough of Kutztown*, 455 F.3d 225, 245-46 (3d Cir. 2006). Moreover, the Court in *Hill* found that a mayor who had harassed an employee was a policymaker since there was no one above the mayor to whom the Plaintiff could complain for a redress of grievances. *See id.* at 246.

Plaintiff plainly alleges that Mayor Roque "served as the chief policy and decision maker for the Town, as well as Plaintiff's Supervisor." (Complaint at ¶ 6) Assuming, as the court must, that Roque was Plaintiff's supervisor, then it can be plausibly inferred that Roque had the final say over Plaintiff's employment.[2] Moreover, for the purposes of the retaliatory harassment, the case law indicates that Roque was a policymaker because he was a mayor who harassed an employee. *Compare with Hill*, 455 F.3d at 246.

Since the Complaint alleges that a policymaker himself violated the law, no policy or custom need be demonstrated. *See Warner*, 855 F. Supp. 2d at 743. It nevertheless bears noting that the Complaint does allege a custom of constitutional violations in that it accuses Roque of terminating and intimidating other employees that Roque believed were politically opposed to him. (Complaint at ¶ 29)

### 2. *Mayor Roque*

Defendants argue that the Complaint merely paints an "unflattering portrait" of Mayor Roque without creating any "explicit connections between the alleged acts

---

[2] "Supervisors" under Section 1983 law are frequently those with the power to hire and fire. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997).

8

and the alleged consequences." (Opposition Brief at 20) Plaintiff need not specify "explicit connections" between the alleged acts and the alleged consequences. To survive a motion to dismiss, Plaintiff must only allege facts that create a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. at 679. To meet this standard, Plaintiff need not plead "specific facts beyond those necessary to his claim and grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citations omitted). Plaintiff merely needs to nudge the claim "across the line from conceivable to plausible." *Ibid.* By alleging that Roque retaliated against Plaintiff's protected activities by demeaning Plaintiff, moving him to an unhealthy office, terminating him without any due process, and then continuing to harass and intimidate him after the termination, Plaintiff stated a facially plausible claim under Section 1983 and CEPA.

### 3. *Deputy Mayor Acosta*

Deputy Mayor Acosta argues that there are insufficient factual allegations to put him on notice of the claims against him. This is not accurate. Plaintiff has alleged that after his termination from the UEZ Coordinator position, the Plaintiff attended a meeting with both Acosta and Roque at which Acosta and Roque presented documents to Gomez that allegedly proved his involvement with the Recall Website. Plaintiff alleges that Roque threatened him because of his involvement with the website. (Complaint at ¶ 58-61) These allegations create a plausible inference that Acosta and Roque were acting in concert and under the color of law to violate the Plaintiff's First Amendment rights.

### 4. *Commissioner Frias*

Commissioner Frias argues that the Complaint does not inform her of the grounds for her liability. The court disagrees. At the outset the Plaintiff has alleged that Frias has supervisory power over his department. (Complaint at ¶ 50) Plaintiff made CEPA-protected complaints to her in this capacity and was terminated several days later, allegedly under the pretext of forging Frias's signature. These facts put Frias on notice of her participation in a CEPA violation.

### 5. *Joseph Roque*

Joseph Roque moves to dismiss on the grounds that (1) the Complaint attributes no specific action directly to him, and (2) even if it did, he was not acting

9

under color of law and should therefore be dismissed from the Section 1983 causes of action.

The Complaint only vaguely references Joseph Roque. It notes no specific action in direct connection with his name. However, the Complaint does state that Mayor Roque and his "co-conspirators" (1) illegally hacked the Recall Website and (2) illegally hacked into Gomez's personal e-mail accounts for the purposes of quelling his First Amendment rights. (Complaint at ¶ 67-68).

In this case, there are external documents, of which the court may take judicial notice, which adequately put Joseph Roque on notice that he is one of the "co-conspirators." The government filed a criminal complaint against Joseph Roque and Felix Roque for illegally hacking into the Recall Website.[3] In the criminal complaint, Joseph Roque was specifically alleged to have been the hacker who obtained illegal access to the Recall Website and an individual e-mail account. Given this constellation of circumstances, the Complaint does put Joseph Roque on fair notice of the claims against him. *See Twombly*, 550 U.S. at 545.

Joseph Roque also argues that he should be dismissed because he was not acting under color of law and therefore cannot be held liable under Section 1983. To act "under color of state law for § 1983 purposes does not require that the defendant be an officer of the State." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Private individuals who are willful participants in joint action with the State or its agents are acting "under color" of law for purposes of § 1983 actions. *Ibid.* Plaintiff does allege that Joseph was conspiring with Mayor Roque in his alleged efforts to quell Gomez's political opposition. Therefore, Plaintiff has sufficiently alleged that Joseph Roque acted under color of law.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **DENIED**.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

---

[3] The Court may take judicial notice of the criminal complaint as a matter of public record without converting this motion to dismiss into a motion for summary judgment. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (1993)).

**Date: November 4, 2013**